## IN THE UNITED STATES FEDERAL DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Shaundra Sanders, David Savage, §
Cynthia Schooley, Todd Schuette, §
Barbara Seaton, Octayvya Shanks, §
Emelia Shark, Zachary Shook, C.W. §
Short, Sherree Sipple, Shawn Smith, §
Jeffery Smith, William Smith, Joan §
Smith, Tammy Smith, Felicia Smith- §
Haynes, Rodney Spink, Cynthia Stacker, §
Brian Stacy, Joyce Stapp, Mitchell Street, §
Charles Stultz, Bobby Sutton, Daryl §
Swanson, Robert Swarts, Alva Tatum, §
Patricia Taylor, Julie Thompson, William §
Tibbits, Marvin Tipton, Harold Toles, §
John Toomer, Collette Torgerson, Sonja §
Torrans, Delia Tucker, Caroline Turnbo, §
Octave Turner, Cynthia Tuttle, Sally Ann §
Vrba, Gilbert Walker, Mary Waltman, §
Summerstorm Weaver, John Wells, §
Susan Weston, Nikki White, Tina White, §
Ron Willer, Leilar Williamson, Benjamin §
Wilson, Joanna Wilson, David Wilson, §
Johnnie Winfrey, Jason Wischmann, §
Maria Wright and Mary Zamora §
§
**Plaintiffs,** §
§
§
§
§
§
**v.** § **Civil Action No. _____**
§
§
ASTRAZENECA PHARMCEUTICALS §
LP AND ASTRA ZENECA LP, §
§
**Defendants.** §

## PLAINTIFFS' ORIGINAL COMPLAINT FOR PERSONAL INJURIES
## AND DEMAND FOR JURY TRIAL

COME NOW the Plaintiffs, through their attorneys and for their Original Complaint

against Defendant AstraZeneca Pharmaceuticals LP and AstraZeneca LP allege and aver as follows:

## I. INTRODUCTION

1.     Plaintiffs, by undersigned counsel, hereby institute this Complaint against AstraZeneca Pharmaceuticals LP and AstraZeneca LP ("Defendants"). This case involves the antipsychotic drug **Seroquel** (also known as quetiapine fumarate), designed, formulated, promoted, sold and distributed by Defendants in the United States. **Seroquel** has caused a high incidence of diabetes, hyperglycemia, pancreatitis, ketoacidosis and diabetic comas, as well as other severe and permanent injuries.

## II. INTRODUCTION

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs are citizens of a state which is different from the state where the Defendants are incorporated and have their principal places of business, and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00). These claims are subject to *Seroquel Products Liability Litigation,* MDL No. 1769, assigned to the Honorable Anne C. Conway, United States District Court for the Middle District of Florida.

3.     Venue is proper within this District pursuant to 28 U.S.C. § 1391 because Defendants sell and distribute their products, including **Seroquel**, in Minnesota and as such, have purposely availed themselves of the privilege of conducting activities within Minnesota. Defendants have thus conducted substantial business in this District and are amenable to suit here.

### III. PARTIES

### PLAINTIFFS

4.      Plaintiff Shaundra Sanders is a citizen of Georgia and was injured as a result of taking **Seroquel**.

Plaintiff David Savage is a citizen of Oregon and was injured as a result of taking **Seroquel**.

Plaintiff Cynthia Schooley is a citizen of Oklahoma and was injured as a result of taking **Seroquel**.

Plaintiff Todd Schuette is a citizen of Ohio and was injured as a result of taking **Seroquel.**

Plaintiff Barbara Seaton is a citizen of Arkansas and was injured as a result of taking **Seroquel**.

Plaintiff Octayvya Shanks is a citizen of Missouri and was injured as a result of taking **Seroquel**.

Plaintiff Emelia Shark is a citizen of Virginia and was injured as a result of taking **Seroquel**.

Plaintiff Zachary Shook is a citizen of Ohio and was injured as a result of taking **Seroquel**.

Plaintiff C.W. Short is a citizen of Illinois and was injured as a result of taking **Seroquel**.

Plaintiff Sherree Sipple is a citizen of Oklahoma and was injured as a result of taking **Seroquel**.

Plaintiff Shawn Smith is a citizen of Maryland and was injured as a result of taking

**Seroquel**.

Plaintiff Jeffery Smith is a citizen of Texas and was injured as a result of taking **Seroquel**.

Plaintiff William Smith is a citizen of Tennessee and was injured as a result of taking **Seroquel**.

Plaintiff Joan Smith is a citizen of Alabama and was injured as a result of taking **Seroquel**.

Plaintiff Tammy Smith is a citizen of Texas and was injured as a result of taking **Seroquel**.

Plaintiff Felicia Smith-Haynes is a citizen of California and was injured as a result of taking **Seroquel**.

Plaintiff Rodney Spink is a citizen of California and was injured as a result of taking **Seroquel**.

Plaintiff Cynthia Stacker is a citizen of Louisiana and was injured as a result of taking **Seroquel**.

Plaintiff Brian Stacy is a citizen of Kentucky and was injured as a result of taking **Seroquel**.

Plaintiff Joyce Stapp is a citizen of Georgia and was injured as a result of taking **Seroquel**.

Plaintiff Mitchell Street is a citizen of North Carolina and was injured as a result of taking **Seroquel**.

Plaintiff Charles Stultz is a citizen of Arizona and was injured as a result of taking **Seroquel**.

Plaintiff Bobby Sutton is a citizen of Illinois and was injured as a result of taking **Seroquel**.

Plaintiff Daryl Swanson is a citizen of Louisiana and was injured as a result of taking **Seroquel**.

Plaintiff Robert Swarts is a citizen of Missouri and was injured as a result of taking **Seroquel**.

Plaintiff Alva Tatum is a citizen of Oklahoma and was injured as a result of taking **Seroquel**.

Plaintiff Patricia Taylor is a citizen of Maryland and was injured as a result of taking **Seroquel**.

Plaintiff Julie Thompson is a citizen of Illinois and was injured as a result of taking **Seroquel**.

Plaintiff William Tibbits is a citizen of Missouri and was injured as a result of taking **Seroquel**.

Plaintiff Marvin Tipton is a citizen of Ohio and was injured as a result of taking **Seroquel**.

Plaintiff Harold Toles is a citizen of Michigan and was injured as a result of taking **Seroquel**.

Plaintiff John Toomer is a citizen of Florida and was injured as a result of taking **Seroquel**.

Plaintiff Collette Torgerson is a citizen of Minnesota and was injured as a result of taking **Seroquel**.

Plaintiff Sonya Torrans is a citizen of Louisiana and was injured as a result of

taking **Seroquel**.

Plaintiff Delia Tucker is a citizen of Tennessee and was injured as a result of taking **Seroquel**.

Plaintiff Caroline Turnbo is a citizen of Tennessee and was injured as a result of taking **Seroquel**.

Plaintiff Octave Turner is a citizen of Louisiana and was injured as a result of taking **Seroquel**.

Plaintiff Cynthia Tuttle is a citizen of Tennessee and was injured as a result of taking **Seroquel**.

Plaintiff Sally Ann Vrba is a citizen of New York and was injured as a result of taking **Seroquel**.

Plaintiff Gilbert Walker is a citizen of Georgia and was injured as a result of taking **Seroquel**.

Plaintiff Mary Waltman is a citizen of Florida and was injured as a result of taking **Seroquel**.

Plaintiff Summerstorm Weaver is a citizen of Pennsylvania and was injured as a result of taking **Seroquel**.

Plaintiff John Wells is a citizen of Ohio and was injured as a result of taking **Seroquel**.

Plaintiff Susan Weston is a citizen of Florida and was injured as a result of taking **Seroquel**.

Plaintiff Nikki White is a citizen of Minnesota and was injured as a result of taking **Seroquel**.

Plaintiff Tina White is a citizen of New Hampshire and was injured as a result of taking **Seroquel**.

Plaintiff Ron Willer is a citizen of Iowa and was injured as a result of taking **Seroquel**.

Plaintiff Leilar Williamson is a citizen of Georgia and was injured as a result of taking **Seroquel**.

Plaintiff Benjamin Wilson is a citizen of Kentucky and was injured as a result of taking **Seroquel**.

Plaintiff Joanna Wilson is a citizen of Mississippi and was injured as a result of taking **Seroquel**.

Plaintiff David Wilson is a citizen of Florida and was injured as a result of taking **Seroquel**.

Plaintiff Johnnie Winfrey is a citizen of Tennessee and was injured as a result of taking **Seroquel**.

Plaintiff Jason Wischmann is a citizen of Washington and was injured as a result of taking **Seroquel**.

Plaintiff Maria Wright is a citizen of Pennsylvania and was injured as a result of taking **Seroquel**.

Plaintiff Mary Zamora is a citizen of California and was injured as a result of taking **Seroquel**.

## DEFENDANTS

5.      Defendant AstraZeneca Pharmaceuticals LP is a Delaware limited partnership

with its principal place of business in Delaware. At all times mentioned herein Defendant AstraZeneca Pharmaceuticals LP was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing **Seroquel** throughout the United States, including Minnesota. Defendant AstraZeneca Pharmaceuticals LP does business by agent in Minnesota and, on information and belief, at all times relevant, advertised, marketed, promoted, sold and/or distributed **Seroquel** in Minnesota. Defendant AstraZeneca Pharmaceuticals LP is the United States Subsidiary of AstraZeneca PLC, and was created as a result of the union of Zeneca Pharmaceuticals and Astra Pharmaceuticals LP in the United States after the 1999 merger. Upon information and belief AstraZeneca Pharmaceuticals LP's general and limited partners are as follows: AstraZeneca AB, a Swedish corporation with its principal place of business in Sweden; Zeneca Inc., a Delaware corporation with its principal place of business in Delaware; Astra USA Inc., a New York corporation with its principal place of business in Delaware; and Astra US Holdings Corporation, ad Delaware corporation with its principal place of business in Delaware. Therefore, AstraZeneca Pharmaceuticals LP is a citizen of Delaware, New York and Sweden.

6.      Defendant AstraZeneca LP is a Delaware limited partnership with its principal place of business in Delaware. At all times relevant herein, AstraZeneca LP was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing **Seroquel** throughout the United States including Minnesota. AstraZeneca LP does business by agent in Minnesota and, on information and belief, at all times relevant, advertised, marketed, promoted, sold and/or distributed **Seroquel** in Minnesota. Upon information and belief, AstraZeneca LP's general partner is AstraZeneca Pharmaceuticals LP, which, as stated in the preceding paragraph, is a citizen of Delaware, New York and Sweden. AstraZeneca LP's sole

limited partner, KBI Sub Inc, is incorporated in Delaware and with its principal place of business in New Jersey. Therefore, AstraZeneca LP is a citizen of Delaware, New York, New Jersey and Sweden.

7.      Service of process on Defendants has been waived pursuant to Case Management Order No. 1. Notice required by Rule 4(d) of the Federal Rules of Civil Procedure will be sent to the following AstraZeneca representative: Paulette Hendrix, AstraZeneca Pharmaceuticals LLP, Law Department (FOP3), 1800 Concord Pike, Wilmington, DE 19850.

8.      When the word "Defendants" or "AstraZeneca" is used herein, it is meant to refer to the Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP, mentioned in the style of this Complaint, which are liable for Plaintiffs injuries.

9.      Defendants are, and were at all relevant times, duly authorized to conduct business in the State of Minnesota.

10.     Defendants have transacted business in the State of Minnesota.

11.     Defendants regularly conduct and solicit business within the State of Minnesota.

12.     At al relevant times, Defendants, through their agents, servants and employees, were the designers, manufacturers, marketers, advertisers, distributors, and sellers of **Seroquel**, also known as quetiapine fumarate.

13.     Defendants have substantial revenue from goods used or consumed in the State of Minnesota.

14.     Defendants expected, or should have expected, that their actions could or would have consequences within the State of Minnesota.

### IV. CONDITIONS PRECEDENT

15.     All conditions precedent have been performed or have occurred.

## V. NATURE OF THE CASE

16.     Plaintiffs were prescribed and ingested the prescription drug **Seroquel** (quetiapine fumarate), manufactured, distributed and/or sold by Defendants.

17.     As a result of the ingestion of **Seroquel**, Plaintiffs developed diabetes mellitus, pancreatitis, or related conditions, and were permanently injured.

## COUNT I
## (NEGLIGENCE)

18.     The allegations previously set forth in paragraphs 1 through 17 are re-alleged and incorporated by reference within this count.

19.     From on or about 1997 through today, Defendant AstraZeneca manufactured, created, designed, tested, labeled, sterilized, packaged, licensed, distributed, supplied, marketed, sold, and advertised and placed in the stream of commerce the pharmaceutical drug product "quetiapine fumarate" which was sold in the United States under the trade name " **Seroquel**."

20.     Defendant AstraZeneca had a duty to exercise reasonable care in the design, manufacture, sale, and distribution of **Seroquel**, including a duty to assure that **Seroquel** did not cause users to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs, and a duty to warn physicians and patients of any serious risks associated with **Seroquel**.

21.     The prescription drug **Seroquel** is an antipsychotic medication belonging to a class of drugs referred to as "atypical" or "second-generation" anti-psychotics. This class of drugs, including **Seroquel**, causes an increased risk of rapid weight gain, hyperlipidemia, hypercholesteremia, hyperglycemia, diabetes mellitus, ketoacidosis, seizures, hyperosmolar coma, death, pancreatitis, liver disease, kidney disease, blindness, and other serious side effects including neuroleptic malignant syndrome and tardive dyskinesia, and other serious health

**PLAINTIFFS' ORIGINAL COMPLAINT FOR PERSONAL INJURIES**                    **Page 10 of 29**
**AND DEMAND FOR JURY TRIAL**

problems associated with diabetes, including heart disease, kidney disease, diabetic neuropathy, digestive problems, bladder problems, loss of vision, damage to blood vessels, high cholesterol, difficulty in healing sores, amputation of feet and limbs, stroke, and death.

22.     **Seroquel** is commonly prescribed to patients to aid in the treatment of schizophrenia and manic episodes associated with bipolar I disorder. The pharmacologic action of these drugs is unknown but is thought to be dependent on their ability to block or moderate the level of dopamine and/or serotonin; chemicals found in the brain that in excessive amounts may possibly cause abnormal thinking and hallucinations.

23.     The anti-psychotic drug market is $12 Billion worldwide. Defendant AstraZeneca viewed **Seroquel** as a blockbuster drug with significant projected growth potential. In 2003, **Seroquel** reached over $2 Billion in annual sales, and, in 2005, **Seroquel** reached over $2.8 Billion in annual sales.

24.     **Seroquel** was initially marketed by Defendant AstraZeneca as safe and effective for the treatment of schizophrenia, and later for bipolar mania, promising greater effectiveness and fewer side effects than with other available antipsychotics.

25.     The risk associated with this class of drugs, including **Seroquel**, and the onset of diabetes is higher than for older, less expensive drugs used to treat schizophrenia.

26.     The product warnings in effect for **Seroquel** prior to and during the time period that Plaintiffs were taking this drug product were vague, incomplete or otherwise wholly inadequate, both substantively and graphically, to alert prescribing physicians, as well as consumer patients, to the actual risks associated with this drug.

27.     Despite the fact that Defendant AstraZeneca knew or should have known that **Seroquel** was associated with the aforesaid adverse effects, including diabetes mellitus, said

Defendant recklessly, negligently, and with willful and wanton indifference to the health and safety of consumers, including Plaintiffs, failed to include adequate warnings regarding hyperglycemia, diabetes mellitus, or related conditions. In fact, the label is still defective in that it does not contain a black box warning for diabetes mellitus or hyperglycemia, fails to warn physicians that **Seroquel** should be used with caution in patients with risk factors for diabetes, including hyperglycemia, obesity or a family history of diabetes, and only recommends blood glucose testing for patients with "risk factors" and those who develop "symptoms" of hyperglycemia.

28.    The marketing and promotional efforts of Defendant AstraZeneca, through its advertisers and sales force, overstated the benefits of **Seroquel** and minimized and downplayed the risks associated with this drug. These promotional efforts were made, while fraudulently, willfully and wantonly withholding important safety information from the physicians, the FDA, and the public, specifically, that Defendant AstraZeneca was aware of numerous reports of diabetes associated with the use of these drugs, well beyond the background rate and well beyond the rate for other anti-psychotic agents.

29.    After **Seroquel** was introduced to the U.S. market, studies conducted in Europe and Japan revealed that numerous patients treated with atypical antipsychotics, including **Seroquel**, experienced a significantly higher incidence of diabetes and hyperglycemia.

30.    Shortly after Defendant AstraZeneca began selling **Seroquel**, reports of consumers who were using **Seroquel** suffering from hyperglycemia, hyperlipidemia, acute weight gain, diabetes mellitus, pancreatitis, and other severe diseases and conditions associated with **Seroquel** began to surface. Defendant AstraZeneca knew, or was reckless in not knowing, of these reports. Furthermore, Defendant AstraZeneca was aware of studies and journal articles

linking use of **Seroquel** with these and other severe and permanent hyperglycemia-related adverse events and diseases prior to and during the time that Plaintiffs ingested **Seroquel**.

31.     In December 2000, an article published in the *British Medical Journal* found no clear evidence that atypical anti-psychotics like **Seroquel** were more effective or better tolerated than conventional anti-psychotics including Haldol and Thorazine.

32.     By July 2001, Defendant AstraZeneca had received at least 46 reports of diabetes mellitus in patients taking **Seroquel**, including reports in the medical literature, and including at least 21 cases of ketoacidosis or acidosis and 11 deaths, and, by the end of 2003, AstraZeneca had received at least 23 more. Most cases appeared within 6 months of initiating **Seroquel** therapy.

33.     A study of diabetes mellitus with use of atypical neuroleptics in the treatment of schizophrenia, published in 2002, found that the prevalence of diabetes in a large national sample was significantly increased for patients who received quetiapine, compared to typical antipsychotic medication.

34.     In a retrospective case-controlled cohort study of diabetes mellitus and antipsychotic treatment in the United States, published in 2003, when researchers compared the hazard for those receiving quetiapine to the hazard with respect to the general population, the researchers found the hazard ratio to be nearly double the risk for controls.

35.     In a study presented at an international conference in 2003, researchers reported that patients taking **Seroquel** had a significantly increased risk of diabetes compared to those taking older antipsychotic drugs.

36.     Recently, researchers at the National Institute of Mental Health published a report on atypical antipsychotics, including **Seroquel**, which found that the majority of patients in each

group discontinued their assigned treatment owing to lack of efficacy or intolerable side effects or for other reasons and that the atypicals, including **Seroquel**, were no more effective than the older, cheaper, and still available conventional antipsychotic perphenazine.

37.    Upon information and belief, the Japanese **Seroquel** label provided a detailed warning regarding the risks of diabetes associated with **Seroquel**, and specifically informed physicians regarding the necessity of medical monitoring of patients on **Seroquel**.

38.    Upon information and belief, the Japanese Seroquel label warned specifically of the diabetes risk, prominently in the beginning of the package label stating:

a.    Quetiapine fumarate is contraindicated for use in patients with diabetes or a history of diabetes.

b.    Quetiapine fumarate should be used with caution in patients with risk factors for diabetes, including hyperglycemia, obesity or a family history of diabetes.

c.    Patients receiving quetiapine fumarate should be carefully monitored for symptoms of hyperglycemia, and the drug should be discontinued if such symptoms occur. The symptoms of severe hyperglycemia include weakness, excessive eating, excessive thirst, and excessive urination.

d.    Physicians should educate patients and their family members about the risk of serious hyperglycemia associated with quetiapine fumarate and how to identify the symptoms of hyperglycemia

39.    In April 2002, the Japanese Health & Welfare Ministry issued emergency safety information regarding the risk of diabetes, diabetic ketoacidosis, and hyperosmolar coma for patients prescribed **Seroquel**. On information and belief, prior to that time, Defendant AstraZeneca was involved in discussions with the Japanese agency regarding labeling changes

for **Seroquel** and other atypicals.

40. While warning of the association of **Seroquel** with diabetes, glucose dysregulation, ketoacidosis, weight gain and the need for medical monitoring in Japan, Defendant AstraZeneca failed to provide the same or similar warnings to the public and prescribing physicians in the United States.

41. AstraZeneca was aware of studies and reports that confirmed previous studies describing a link between the class of atypical anti-psychotics and diabetes. These reports, described an increased incidence of diabetes and hyperglycemic-related health issues in patients receiving **Seroquel**(R), compared to patients receiving older anti-psychotics, or even other atypical anti-psychotics.

42. Despite having long possessed this information, Defendant delayed taking action to correct the obvious defect in its product labeling for months, instead haggling with the FDA over the wording of any proposed labeling change, clearly in an effort to avoid any adverse affect from a marketing perspective. During this period, Defendant did not pass on this information regarding the diabetes risk to physicians or issue new labeling containing specific warnings. Defendant has continued to tell physicians and consumers that it did not believe that **Seroquel** caused diabetes, and failed to add any warning regarding pancreatitis. In 2004 the FDA issued a warning letter to Defendant for accompanying the new label with a misleading Dear Doctor letter that downplayed the risk of diabetes and neglected to warn prescribers and patients that patients taking **Seroquel** needed to be continually monitored for signs and symptoms of diabetes. Again, in November 2006, the FDA issued another warning letter to Defendant for distributing false and misleading promotional materials to doctors and institutions regarding the risk of diabetes in users of **Seroquel** and downplaying the risk

43.     Defendant AstraZeneca was negligent in the design, manufacturing, testing, advertising, marketing, promotion, labeling, warnings given, and sale of **Seroquel** in that, among other things, Defendant AstraZeneca:

a.      Failed to accompany the product with adequate warnings regarding the serious adverse side effects, including diabetes mellitus, ketoacidosis, hyperosmolar coma, death, hyperglycemia, weight gain, glucose dysregulation, hyperlipidemia, hypertriglyceridemia, neuroleptic malignant syndrome and tardive dyskinesia associated with the use of **Seroquel**;

b.      Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of **Seroquel**;

c.      Failed to provide adequate training and instruction to medical care providers for appropriate use of **Seroquel**;

d.      Failed to adequately warn Plaintiffs prior to actively encouraging the sale of **Seroquel**, either directly or indirectly (through the prescribing physician), orally or in writing, about the following:

i.      The need to take a complete medical history of the patient prior to ingesting **Seroquel**;

ii.     the need for a battery of diagnostic tests to be performed on the patient prior to ingesting **Seroquel** to discover risk factors and help prevent potentially fatal side effects; and

iii.    the need for comprehensive, regular medical monitoring to ensure early discovery of hyperglycemia, diabetes, weight gain, hyperlipidemia, hypertriglyceridemia, pancreatitis, and other potentially fatal side effects;

e.      Failed to adequately warn that the risks associated with the ingestion of **Seroquel** exceeded the risks of other comparable forms of medication for schizophrenia or bipolar mania;

f.      Failed to adequately warn about the increased danger and potentially fatal relationship in combining use of **Seroquel** with various other drugs or use with certain identifiable disorders;

g.      Exaggerated the benefits and downplayed the risks of **Seroquel** in a deceptive manner and in a manner lacking fair balance;

h.      Recklessly, falsely, and deceptively represented or knowingly omitted, suppressed, or concealed material facts regarding the safety and efficacy of **Seroquel** from prescribing physicians and the consuming public, and, had prescribing physicians and the consuming public known of such facts, the drugs would never have been prescribed to, or used by, Plaintiffs;

i.      Remained silent despite their knowledge of the growing acceptance by the public and physicians of misinformation and misrepresentations regarding both the safety and efficacy of atypical antipsychotics in general and **Seroquel** in particular, and did so because the prospect of huge profits outweighed health and safety issues, all to the injury and detriment of Plaintiffs;

j.      Failed to perform their post-manufacturing and continuing duty to warn which arose when they knew, or with reasonable certainty should have known, that **Seroquel** was being prescribed in a fatal or injurious combination or manner for uses for which there were no adequate studies as to safety and efficacy and for which the drug product was not approved;

k.    Despite the fact that Defendant AstraZeneca received numerous reports of rapid weight gain, hyperglycemia, diabetes, ketoacidosis, hyperosmolar coma, death, neuroleptic malignant syndrome, tardive dyskinesia, and other serious adverse events, for **Seroquel** and other atypical antipsychotic drugs of this class via the spontaneous reporting system and the medical literature prior to and during the time that Plaintiffs were ingesting **Seroquel**, such that Defendant AstraZeneca knew or should have known that a reasonable association existed between **Seroquel** and said serious adverse events, nonetheless, Defendant AstraZeneca continued to market **Seroquel** to physicians and consumers, including Plaintiffs, without disclosing these adverse events and despite the fact that there were safer alternative methods of treating schizophrenia and bipolar mania;

l.    Defendant AstraZeneca, through its marketing department, sales managers, and field sales force, promoted **Seroquel** for uses beyond its approved indications, offering incentives to doctors to increase prescriptions in order to capture a larger share of the anti-psychotic market.

m.    Failed to use reasonable care in the selection, hiring, training and supervision of its employees and agents engaged in marketing, promotion, distribution, and sale of **Seroquel**;

n.    Violated the laws and regulations regarding the labeling, distribution, sale, marketing, and promotion of **Seroquel**; and

o.    Was otherwise careless, negligent, grossly negligent, reckless, and acted with willful and wanton disregard for the rights of Plaintiffs.

44.    Defendant AstraZeneca knew or should have known that physicians and patients, such as Plaintiffs, would rely on the labeling for **Seroquel** and would foreseeably suffer injury as

a result of Defendant AstraZeneca's failure to exercise ordinary care as described above.

45.     The aforesaid negligent acts by Defendant AstraZeneca fell below the standard of care of a reasonably prudent pharmaceutical drug manufacturer or distributor.

46.     As a direct and proximate result of said acts by Defendant AstraZeneca, Plaintiffs has suffered, and will continue to suffer in the future, injuries and damages as described below:

a.     serious permanent physical injuries, including diabetes mellitus, pain and mental anguish;

b.     loss of enjoyment of life;

c.     complications of diabetes such as heart disease, kidney disease, diabetic neuropathy, digestive problems, bladder problems, loss of vision, damage to blood vessels, high cholesterol, difficulty in healing sores, amputation of feet and limbs, stroke, and death;

d.     medical attention and care and medical expenses;

e.     loss of earnings and/or earning capacity; and

f.     need for assistance with the activities of daily living, and other financial expenses.

## COUNT II
## (FRAUD)

47.     Plaintiffs repeat and reallege the allegations set forth in the paragraphs above as if fully set forth herein.

48.     Defendant AstraZeneca knew or should have known that **Seroquel** was dangerous and not as effective for its purpose as represented, and posed greater risks than disclosed, and was otherwise not as represented, as previously alleged.

49.     Despite the fact that Defendant AstraZeneca was under a duty to disclose this

information to Plaintiffs physician and to Plaintiffs, Defendant AstraZeneca knowingly, and with intent to deceive and defraud consumers, including Plaintiffs, made misrepresentations and partial disclosures concerning the nature and quality of **Seroquel** which Defendant AstraZeneca had a duty to correct because Defendant AstraZeneca was in a superior position to know the true state of the facts about the dangerous and defective nature of **Seroquel** and its known risks to physicians and Plaintiffs. These deliberate and/or intentional misrepresentations and omissions of material facts include but are not limited to:

      a.     Stating orally, in product labeling, and in marketing and promotional materials that **Seroquel** was safe and effective for the treatment of schizophrenia and bipolar mania, which was false and not supported by adequate studies;

      b.     Stating orally, in product labeling, and in marketing and promotional materials that **Seroquel** was safer and more effective for the treatment of schizophrenia and bipolar mania than other available drug products which were less expensive, which was false and not supported by adequate studies;

      c.     Advising physicians through sales and marketing personnel that **Seroquel** was safe and effective for the treatment of conditions and symptoms for which it was not approved and for which there were not adequate studies of safety and efficacy;

      d.     Suppressing, failing to disclose and mischaracterizing the known risks of rapid weight gain, hyperglycemia, hyperlipidemia, diabetes mellitus, diabetic ketoacidosis, hyperosmnolar coma, death, neuroleptic malignant syndrome, and tardive dyskinesia due to ingestion of **Seroquel**, which were known to Defendant AstraZeneca through spontaneous reports and studies published in the medical literature;

      e.     Concealing the fact that **Seroquel** was required by the responsible

Japanese regulatory agency to carry a warning of the risk of hyperglycemia and diabetes and that patients should be monitored for these conditions and the drug stopped if signs or symptoms appeared;

f.      Omitting material information showing that **Seroquel** was no more effective than other anti-psychotic drugs already available on the market;

g.      Failing to timely and fully disclose the complete and actual results of all clinical tests and studies related to **Seroquel**;

h.      Failing to disclose that adequate and/or standard and/or generally accepted standards for pre-clinical and clinical testing had not been done;

i.      Downplaying or even denying to practitioners, both orally and in written promotional materials, that **Seroquel** and other drugs in this class can and do cause rapid weight gain, hyperglycemia, hyperlipidemia, diabetes rnellitus, diabetic ketoacidosis, and complications and death therefrom, contrary to information placed in the product labeling at the direction of the FDA;

j.      Failing to advise prescribers and consumers of the need to take a complete medical history prior to prescribing or using **Seroquel** and to monitor patients for blood sugar levels from labeling and promotional materials;

k.      Failing to disclose that clinical pre-marketing studies for **Seroquel** were conducted with limited numbers of patients, in limited populations, for short periods of use of only a few weeks, or with lower doses of **Seroquel**, and that **Seroquel** had not been adequately tested for safety and efficacy in children, the elderly, patients with preexisting medical conditions, or in conjunction with other medications; and then encouraging use for patients in those populations or, knowing that the drugs were being

used in that way, failing to warn practitioners of the risks of doing so;

1.      Failing to disclose that the drop-out rate with patients on **Seroquel** was among the highest of any antipsychotic medication, an indication of lack of effectiveness or intolerability or both;

m.      Failing to disclose that adequate and/or standard and/or generally accepted standards for post-marketing testing had not been done;

n.      Making these misrepresentations concerning the safety, efficacy and benefits of **Seroquel** as detailed in this Complaint without full and adequate disclosure of the underlying facts which rendered such statements false and misleading; and

o.      Failing to include the aforesaid information in "Dear Doctor" or "Dear Healthcare Provider" letters and other correspondence with practitioners;

p.      Failing to include the aforesaid information in marketing and promotional materials given or shown to practitioners; and

q.      Failing to include the aforesaid information in the product labeling or package inserts.

50.     Neither Plaintiffs nor their doctors knew or could have learned the material facts and important information Defendant AstraZeneca omitted and suppressed. The facts and information suppressed and concealed by Defendant AstraZeneca were material, and of such a nature that the suppression and concealment of such facts caused, contributed to, and/or was a substantial factor in the decision of Plaintiffs physician to prescribe, and of Plaintiffs to take, **Seroquel**.

51.     Defendant AstraZeneca knew or should have known that Plaintiffs physician and Plaintiffs were relying on Defendant's fraudulent misrepresentations and omissions of material

facts.

52.     As a direct and proximate result of Defendant AstraZeneca's' fraud, suppression, and omission of material facts, Plaintiffs acted to Plaintiffs detriment in purchasing and ingesting **Seroquel**, which Plaintiffs would not have purchased or ingested had Plaintiffs been told the truth, and should be reimbursed what Plaintiffs spent.

53.     As a direct and proximate result of said acts by Defendant AstraZeneca, Plaintiffs have suffered injuries and damages as described herein.

## COUNT III
## STRICT PRODUCT LIABILITY (FAILURE TO WARN)

54.     Plaintiffs repeat and reallege the allegations set forth in the paragraphs above as if fully set forth herein.

55.     The **Seroquel** manufactured and/or supplied by Defendant AstraZeneca was and is unaccompanied by proper warnings regarding all known adverse side effects and the comparative severity and duration of such adverse effects. The warnings given did not and do not accurately reflect the severity or duration of the adverse side effects or the true potential and/or likelihood or rate of the side effects.

56.     Defendant AstraZeneca failed to perform adequate testing, which would have shown that **Seroquel** possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made with respect to the use of the drugs. Had the testing been adequately performed, **Seroquel** would have been allowed to enter the market, if at all, only with warnings that would have clearly and completely identified the risks and dangers of the drugs.

57.     As a direct and proximate result of the failure of Defendant AstraZeneca to conduct adequate testing and to furnish an adequate warning to physicians and consumers

including Plaintiffs and Plaintiffs doctors, the **Seroquel** manufactured and/or distributed and/or supplied by Defendant AstraZeneca, at the time it left Defendant AstraZenca's hands, was unreasonably dangerous and defective.

58.    Despite this defect, Defendant AstraZeneca continued to aggressively promote **Seroquel** to physicians, including Plaintiffs physician and to consumers, including Plaintiffs.

59.    As a direct and proximate result of the defective condition of **Seroquel**, as manufactured and/or supplied and/or distributed by Defendant AstraZeneca, Plaintiffs have suffered injuries and damages as described herein.

**COUNT IV**
**STRICT PRODUCT LIABILITY**
**(<u>RESTATEMENT SECOND OF TORTS §402A (1965)</u>)**

60.    Plaintiffs repeat and reallege the allegations set forth in the paragraphs above as if fully set forth herein.

61.    The **Seroquel** manufactured and/or distributed and/or supplied by Defendant AstraZeneca was not altered prior to use and was defective in design or formulation in that when it left the hands of Defendant AstraZeneca, the foreseeable risks exceeded the benefits associated with the design or formulation.

62.    Alternatively, the **Seroquel** manufactured, distributed and/or supplied by Defendant AstraZeneca was defective in design or formulation in that when said drug product left the hands of said Defendant, it was unreasonably dangerous, was more dangerous than an ordinary consumer would expect, and was more dangerous than other anti-psychotic drugs available at that time.

63.    There existed, at all times material hereto, safer alternative medications.

64.    As a direct and proximate result of the defective condition of **Seroquel**, Plaintiffs

have suffered injuries and damages as described herein.

## COUNT V
## BREACH OF EXPRESS WARRANTY

65.     Plaintiffs repeat and reallege the allegations set forth in the paragraphs above as if fully set forth herein.

66.     Defendant AstraZeneca expressly warranted in the product labeling and, on information and belief, in promotional materials that **Seroquel** was safe and effective for the treatment of schizophrenia and bipolar mania, based on adequate clinical studies and that it was "well-tolerated."

67.     Defendant AstraZeneca failed to conform to these express representations because **Seroquel** is not safe or effective and possesses a high risk of serious, life-threatening side effects, including those suffered by Plaintiffs.

68.     Plaintiffs have given reasonable notice to Defendant AstraZeneca of its breach of express and implied warranties.

69.     As a direct and proximate result of said breach of warranty, Plaintiffs have suffered injuries and damages as described herein.

## COUNT VI
## BREACH OF IMPLIED WARRANTY

70.     Plaintiffs repeat and reallege the allegations set forth in the paragraphs above as if fully set forth herein.

71.     At the time Defendant AstraZeneca marketed, sold and distributed **Seroquel** for use by Plaintiffs and other consumers, said Defendant knew of the use for which **Seroquel** was intended and impliedly warranted **Seroquel** to be of merchantable quality and safe and fit for such use.

72.     Plaintiffs and their physicians reasonably relied upon the skill and judgment of Defendant AstraZeneca as to whether **Seroquel** was of merchantable quality and safe and fit for its intended use.

73.     Contrary to such implied warranties, **Seroquel** was not of merchantable quality or safe or fit for its intended use because **Seroquel** was and is unreasonably dangerous and unfit for the ordinary or particular purposes for which it was used as described above.

74.     Plaintiffs have given reasonable notice to Defendant AstraZeneca of its breach of express and implied warranties.

75.     As a direct and proximate result of said breach of warranty, Plaintiffs have suffered injuries and damages as described herein.

### COUNT VII
### CONCEALMENT, SUPPRESSION, OR OMISSION OF MATERIAL FACTS

76.     Plaintiffs repeat and reallege the allegations set forth in the paragraphs above as if fully set forth herein.

77.     Defendant AstraZeneca had a post-manufacturing and continuing duty to warn, which arose when they knew, or with reasonable care should have known, that adverse events associated with **Seroquel** were serious and sometimes fatal.

78.     Defendant AstraZeneca knew or should have known (or would have known had appropriate testing and/or safety monitoring been done) that use of **Seroquel** caused serious and potentially life-threatening side effects of diabetes.

79.     Defendant AstraZeneca omitted, suppressed, or concealed material facts concerning the dangers and risks associated with the use of **Seroquel**, including but not limited to the risks of diabetes mellitus and other injuries. Further, said Defendant purposely downplayed and understated the serious nature of the risks associated with **Seroquel** use in order

to increase the sales of the drug product.

80.     Defendant AstraZeneca falsely and deceptively misrepresented or knowingly omitted, suppressed, or concealed facts of such materiality that **Seroquel** would never have been approved, no reasonable physician would have prescribed **Seroquel** to Plaintiffs, and Plaintiffs would not have ingested **Seroquel** if they had known about the concealed facts.

81.     Defendant AstraZeneca engaged in calculated silence, despite their knowledge of the growing public acceptance of misinformation and misrepresentations regarding both the safety and efficacy of the use of **Seroquel**, and did so because the prospect of significant future profits caused them to ignore concerns regarding health and safety issues, all to the significant detriment of the public, including the Plaintiffs.

82.     Safer and less expensive anti-psychotics were available to patients being treated with **Seroquel**.

83.     Defendant AstraZeneca's actions, as set forth herein, constitute knowing omission, suppression or concealment of material facts, made with the knowledge and intent that doctors and their patients, including Plaintiffs, would rely upon such concealment, suppression or omission in connection with the prescribing and use of **Seroquel**.

84.     In fact, Plaintiffs, directly and/or through Plaintiffs' prescribing physicians, were induced by the Defendant AstraZeneca's omission, suppression and concealment to use **Seroquel**.

85.     As a direct and proximate result of the conduct of Defendant AstraZeneca as described herein, the Plaintiffs have suffered injuries and damages as described herein.

WHEREFORE, Plaintiffs demand joint and several relief as to all Defendants as follows:

(a)     General and special compensatory damages in excess of $75,000.00 for

personal injury, permanent physical injury, mental anguish, emotional distress, loss of enjoyment of life, and economic loss; past and future loss of income and earning capacity, past and future medical expenses;

(b)     Pre and Post Judgment Interest;

(c)     Attorneys' fees and costs; and

(d)     Such other remedies as this Honorable Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

Demand is hereby made for a trial by jury.

DATED this the 14th day of November, 2008.

## ACKNOWLEDGMENT

119. The allegations in this Complaint are well grounded in fact and are warranted by existing law or a good faith argument for its extension, modification or reversal. Plaintiffs bring this Complaint in good faith and not for any improper purposes. Plaintiffs acknowledge that the costs, disbursements and reasonable attorney and witness fees may be awarded to Defendant pursuant to **Minn. Stat. Sec. 549.21, Subd. 2** and the Rules of Civil Procedure if there is an affirmative finding by the Court to the contrary.

Respectfully submitted,

"s/ Rhett A. McSweeney"_____.

Rhett McSweeney
MN Bar No. 269542
McSweeney & Fay
2116 Second Avenue South
Minneapolis, MN 55404
612.333.6900 (telephone)
612.333.0355 (facsimile)

Of counsel:

Patrick J. Mulligan
TX State Bar No. 14651270
Eric Roberson
TX State Bar No. 00792803
Reid Stewart
TX State Bar No. 24003310

The Mulligan Law Firm
4514 Cole Avenue, Suite 300
Dallas, Texas 75205
214.219.9779 (telephone)
214.520.8789 (facsimile)

**ATTORNEYS FOR PLAINTIFFS**